NUMBER 13-00-773-CV

 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI

 __________________________________________________________________ 



IN RE: DIVERSICARE GENERAL PARTNER, INC., 

DIVERSICARE LEASING CORPORATION, ADVOCAT, INC., 

AND TEXAS DIVERSICARE LIMITED PARTNERSHIP 

D/B/A GOLIAD MANOR

__________________________________________________________________ 



On Petition for Writ of Mandamus .

 __________________________________________________________________ 



O P I N I O N

 

Before the Court En Banc

 Opinion by Justice Rodriguez

 

 In this mandamus proceeding, relators, Diversicare General Partner, Inc., Diversicare Leasing Corporation, Advocat, Inc.,
and Texas Diversicare Limited Partnership d/b/a Goliad Manor, seek relief from a trial court's order requiring relators to
produce the personal and clinical records(1) of a former resident of Goliad Manor, a nursing facility,(2) to the real parties in
interest, Maria G. Rubio, also a former resident of Goliad Manor, and Rubio's next friend and daughter, Mary Holcomb.
The court ordered redaction of the former resident's identifying information from the records and the insertion of "Mr." and
his last initial, in lieu of his name on the documents.(3) We hold that the trial court abused its discretion in ordering relators
to produce the records at issue. Accordingly, we conditionally grant the petition for writ of mandamus.

 Mandamus will issue to correct a clear abuse of discretion. See Liberty Nat'l Fire Ins. Co. v. Akin, 927 S.W.2d 627, 630
(Tex. 1996) (orig. proceeding); Walker v. Packer, 927 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). The trial court
has no discretion to misinterpret or misapply the law; an abuse of discretion is committed when the trial court clearly fails
to analyze or apply the law correctly. See Walker, 827 S.W.2d at 840. 

 The real parties allege health care liability claims against relators. The claims include allegations of sexual assault
committed against Ms. Rubio by a male resident of Goliad Manor. The real parties seek the personal and clinical records
of the male resident who has since passed away. They maintain the records may be the best evidence of the sexual assault
allegations, and that the records are needed because they would be the only source of discovery that would provide
information regarding the alleged sexual abuse, as well as relator's knowledge of the resident's behavior and its response to,
or failure to respond to, such knowledge.(4)

 Relators seek relief on grounds that the trial court abused its discretion in compelling the production of privileged,
confidential personal and clinical records. They further maintain that redacting the man's name will in no way assure his
privacy. 

Confidentiality of Records of Nursing Home Resident

 Relators contend that the personal and clinical records of a nursing facility resident are strictly confidential and may not be
released under the circumstances presented in this case. They urge that numerous Texas statutes protect the privacy of such
records. We agree. 

 First, the Texas Human Resources Code, the Texas Health and Safety Code, and the Texas Administration Code mandate
that the personal and clinical records of an elderly individual, specifically one who is a resident in a nursing home, are
confidential and protected from release. See Tex. Human Res. Code. Ann. § 102.003(j) (Vernon Supp. 2001); Texas
Health & Safety Code Ann. 242.501 (Vernon Supp. 2001); 40 Tex. Admin. Code § 19.1910 (2000). 

 The Texas Human Resources Code addresses the rights of the elderly. See Tex. Human Res. Code. Ann. § 102.001-.005
(Vernon Supp. 2001). "A person providing services to the elderly may not deny an elderly individual a right guaranteed by
this chapter."(5) Tex. Human Res. Code. Ann. § 102.002(a) (Vernon Supp. 2001). A "person providing services" is defined
in this chapter as "an individual, corporation, association, partnership, or other private or public entity providing
convalescent and nursing home services. . . ." Tex. Human Res. Code. Ann. § 102.001(4) (Vernon Supp. 2001). 

 One of the rights guaranteed by chapter 102 of the human resources code protects the confidentiality of the elderly
individual's personal and clinical records. See Tex. Human Res. Code. Ann. § 102.003(j) (Vernon Supp. 2001). Section
102.001(j) specifies: 

 An elderly individual is entitled to access to the individual's personal and clinical records. These records are confidential
and may not be released without the elderly individual's consent, except that the records may be released: (1) to another
person providing services at the time the elderly individual is transferred; or (2) if the release is required by another law. 



Id. The real parties do not argue that either exception set out in section 102.002(j) applies in this case. 

 Furthermore, the Texas Health and Safety Code instructed the Texas Department of Human Resources (the department) to
adopt, by rule, a statement regarding the rights of a nursing home resident that was consistent with chapter 102 of the
human resources code. SeeTexas Health & Safety Code Ann. 242.501(a) (Vernon Supp. 2001). At a minimum, the
statement was to address the resident's legal right "to have information about the resident in the possession of the institution
maintained as confidential." See Texas Health & Safety Code Ann. 242.501(a)(7) (Vernon Supp. 2001). Following this
directive, the department set out by rule in the Texas Administrative Code that "[t]he [nursing home] resident has the right
to personal privacy and confidentiality of his personal and clinical records." 40 Tex. Admin. Code § 19.407 (2000). "[T]he
resident may approve or refuse the release of personal and clinical records to any individual outside of the facility," except
when the resident is transferred to another health care institution; the record release is required by law;(6) or during surveys.
Id. at § 19.407(3). The real parties argue none of the foregoing exceptions apply in the instant case. 

 Further, section 19.1910 of the administrative code, entitled "Clinical Records," sets out that "[t]he facility must safeguard
clinical record information against loss, destruction or unauthorized use." 40 Tex. Admin. Code § 19.1910(c) (2000). "The
facility must keep confidential all information contained in the resident's records . . . except when release is required by: (1)
transfer to another health care institution; (2) law or this chapter; (3) third party payment contract; or (4) the resident." 40
Tex. Admin. Code § 19.1910(d) (2000). The real parties acknowledge section 19.1910 compels a nursing home to
maintain the confidentiality of the records. However, they argue the second exception applies, and that section
19.1912(h)(2) in this chapter provides for production of the records at issue in this case. 

 Section 19.1912, entitled "Additional Clinical Record Service Requirements," provides, in relevant part: 

 (h) Confidentiality. The facility must develop and implement policies and procedures to safeguard the confidentiality of
medical record information from unauthorized access. 



* * * * * 

 

 (2) The facility must allow access and/or release confidential medical information under court order or by written
authorization of the resident or his or her legal representative (see § 19.407 of this title (relating to Privacy and
Confidentiality)). 



Tex. Admin. Code § 19.1912(h)(2) (2000). The real parties argue that this exception applies because the court has ordered
relators to release the requested personal and clinical records. We disagree with this circuitous reasoning because the order
upon which their contention is based is the same order being challenged on appeal. Furthermore, the exception in this
section only addresses the release of medical information, which is arguably distinguishable from other personal and
clinical records sought. Nonetheless, without making that distinction, we conclude this argument fails. Thus, no exception
applies to destroy the confidentiality of the male resident's nursing facility records.

Characterization of the Records as Party or Nonparty Records

 Relators urge that the records at issue are nonparty records and have not been properly requested, whereas the real parties
argue that they are party records and have been properly requested. In addressing this issue both relators and the real
parties rely on rule 192 of the Texas Rules of Procedure. 

 Rule 192 provides, in relevant part, that "[i]n general, a party may obtain discovery regarding any matter that is not
privileged and is relevant to the subject matter of the pending action. . . ." See Tex. R. Civ. P. 192.3(a) (emphasis added).
The rule further provides "[a] person is required to produce a document . . . that is within the person's possession. . . ." See
Tex. R. Civ. P. 192.3(b). "[P]ossession, custody, or control" is defined as either "physical possession of the item" or "a
right to possession of that item that is equal or superior to the person who has physical possession of the item." Tex. R.
Civ. P. 192.7(b). 

 The real parties contend that the court has ordered production from a party, Goliad Manor, a party in physical possession
of the records, thus rule 192.3(b) applies. See Tex. R. Civ. P. 192.3(b). Relators contend, however, because the records are
confidential and protected from release under the facts of this case, the nonparty male resident's estate or relatives "have a
right to possession that is equal or superior to that of the nursing facility which has physical possession of the item." See
Tex. R. Civ. P. 192.7(b). We agree. 

 The nonparty or his legal representative has the right to protect these confidential records from release. See Texas Health
& Safety Code Ann. 242.501 (Vernon Supp. 2001); Tex. Human Res. Code. Ann. § 102.003(j) (Vernon Supp. 2001); 40
Tex. Admin. Code § 19.1910 (2000). Furthermore and importantly, because no exception to the confidential nature of these
records has been established, the request may be outside the scope of discovery anticipated by this rule. See Tex. R. Civ. P.
192.3(a). Additionally, personal and clinical records do not have to be in the nonparty's possession to be described as
nonparty records, they only have to be personal and clinical records regarding the nonparty. See, e.g., Tex. R. Civ. P.
196.1(c)(1) (if party requests another party to produce medical or mental health records regarding nonparty, requesting
party must serve nonparty with request for production). Because the nonparty has a right to protect his records, he must be
given the opportunity to assert that right. Accordingly, we characterize the records at issue in this case as nonparty records. 

Procedure for Obtaining Nonparty Records

 As nonparty records, the real parties must follow the applicable rules of procedure governing obtaining nonparty records.
See Texas Educ. Agency v. Anthony, 700 S.W.2d 192, 192 (Tex. 1985) (orig. proceeding); San Antonio Models, Inc. v.
Peeples, 686 S.W.2d 666, 670 (Tex. App.--San Antonio 1985, orig. proceeding). "Parties may request production and
inspection of documents and tangible things from nonparties under Rule 205.3." Tex. R. Civ. P. 196 cmt. 6. Rule 205
mandates that a party may compel discovery from a nonparty by order of the court under rule 196.7 (entry upon property),
rule 202 (deposition before suit or to investigate claims), or rule 204 (physical and mental examinations), or by serving a
notice on the nonparty and all parties pursuant to rule 205.2 and a subpoena compelling production of documents. See Tex.
R. Civ. P. 205.1-205.3. The nonparty must then respond in accordance with rule 176 which provides the nonparty with an
opportunity to make objections to the production and to move for a protective order. See Tex. R. Civ. P. 176.6(c)-(e). 

 The real parties argue, nonetheless, if it is determined that the records are nonparty records, Texas Rule of Civil Procedure
196.1(c) governs the production of such medical records, and no notice is required because exceptions to the rule apply. 

 Rule 196.1(c) articulates the following exceptions to noticing the nonparty: 



 (2) Exceptions. A party is not required to serve the request for production on a nonparty whose medical records are sought
if: 



* * * * * 



 (B) the identity of the nonparty whose records are sought will not directly or indirectly be disclosed by production of the
records; 



 (C) the court, upon a showing of good cause by the party seeking the records, orders that service is not required. 



Tex. R. Civ. P. 196.1(c). However, while rule 196.1(c) contemplates redaction of identifying information from nonparty
medical records or a showing of good cause in order to avoid service on the nonparty, it is only a notice requirement rule
and in no way addresses the parameters of the substantive confidentiality of the records. See Hecht & Pemberton,A Guide
to the 1999 Texas Discovery Rules Revisions, G-14 (Nov. 11, 1998). Cf. In re: Columbia Valley Regional Medical Center,
No. 13-00-726-CV, slip op. at 4-5, 2001 Tex. App. LEXIS _____, at *___ (Tex. App.--Corpus Christi Mar. 8, 2001, no pet.
h.) (orig. proceeding) (designated for publication) (application of rule to nonparty medical records). 

 Section 3 of rule 196.1(c) explicitly provides that "[n]othing in this rule excuses compliance with laws concerning the
confidentiality of medical . . . records." Tex. R. Civ. P. 196.1(c)(3). This rule expressly mandates that compliance with the
laws of confidentiality cannot be excused. Comment 8 to the 1999 rule changes specifically points out that "[r]ule 196.1(c)
is merely a notice requirement and does not expand the scope of discovery of a nonparty's medical records." Tex. R. Civ.
P. 196.1 cmt. 8. This rule does not imply that such records are or should be discoverable. See Hecht & Pemberton, A
Guide to the 1999 Texas Discovery Rules Revisions, G-14 (Nov. 11, 1998). 

 Rule 196.1(c) of the Texas Rules of Civil Procedure cannot be relied on to circumvent the Texas Health and Safety Code,
the "Rights of the Elderly Act," and the Texas Administrative Code. Therefore, to the extent the information contained in
the personal and clinical records of the former resident is medical information, we conclude rule 196.1(c) does not
invalidate the confidentiality of the records.

 Even were the confidentiality issues not present, the record reveals no evidence of good cause established by the party
seeking the records. There were no evidentiary hearings held on the real parties' amended motion to compel. Thus, the
exception set out in 196.1(c)(2)(C) for medical information has not been established.

Moreover, simply redacting the identity of the resident from the records, when he was a long-time resident of Goliad, and
in a case to be tried to a Goliad County jury, will not assure that his identity will not be indirectly disclosed by the
production of the records. By using his title and last initial, the parties are simply narrowing down the identity of the
resident. This process of redacting the records of identifying information will in no way assure the former resident's
privacy, when the balance of his personal and clinical records will be available for public review if the records are ordered
released from Goliad Manor.

 It is not the intent of this Court to hamper discovery of relevant information in this lawsuit, or to foreclose such discovery
in other suits. See Columbia Valley, No. 13-00-726-CV, slip op. at 8, 2001 Tex. App. LEXIS _____, at *____. However,
the statutes and administrative rules applicable in this case clearly state that personal and clinical records of a nursing home
are confidential and protected from release. The real parties in interest have not shown that an exception applies under the
facts of this case. Thus, the information remains outside the scope of discovery. Furthermore, while the real parties argue
that the nonparty records are the only source of the information sought, they have not established that these records are the
only source of that information. The real parties have already obtained and relied on a Texas Department of Human
Services's investigation report, a report that addresses alleged sexual abuse at the nursing facility. They could also seek
such information by deposing other administrative and health care personnel. Additionally, the real party could make
additional attempts to locate the family of the nonparty and seek direct consent for release of the nonparty records, as
required by rule of procedure 205. It appears, therefore, that there are appropriate discovery tools available to discern the
factual information sought, without forcing the production of confidential nonparty records. See id. 

 Accordingly, we hold that, under the facts of this case, the trial court abused its discretion in ordering relators to produce
the personal and clinical records of a nonparty. We are confident that the trial court will vacate its orders requiring Goliad
Manor to produce those records, and will protect the identity of the male resident whose records are at issue by sealing
appropriate documents filed in the trial court. 

 Therefore, we conditionally grant relators' petition for writ of mandamus. Our mandamus will issue only if the trial court
fails to vacate its orders. Because of our ruling today, and because we have been informed that the trial in this matter has
been continued, we deny the real parties' motion to expedite the proceedings as moot. 

 Further, the Clerk of this Court is directed to treat as sealed all documents filed in this mandamus proceeding. 

NELDA V. RODRIGUEZ 

Justice 



Concurring Opinion by Justice J. Bonner Dorsey. 



Publish . 

Tex. R. App. P. 47.3. 



Opinion delivered and filed 

this 8th day of March, 2001. 

1. We note that Goliad Manor refers to the requested records as health care, clinical, personal and medical records, while
Rubio and the trial court describe them as medical records. It appears that the nursing facility records referenced by both
parties are the same. Neither party argues that the statutes pertaining to nursing facility records apply to some but not all of
the records. See Tex. Human Res. Code. Ann. § 102.003(j) (Vernon Supp. 2001); Texas Health & Safety Code Ann.
242.501 (Vernon Supp. 2001); 40 Tex. Admin. Code § 19.1910 (2000). Therefore, for convenience, we will refer to all
records as personal and clinical records, unless otherwise noted.

2. A "nursing facility/home" is defined, in relevant part, as "[a]n institution that provides organized and structured nursing
care and service, and is subject to licensure under Health and Safety Code, Chapter 242." See 40 Tex. Admin. Code §
19.101 (2000) (definition from chapter 19, entitled "Nursing Facility Requirements for Licensure and Medicaid
Certification").

3. The order further required that the true identity of the resident be filed with the trial court and sealed with plaintiffs'
amended motion and the order. Only counsel for the parties were given access to the sealed documents. The court also
ordered the sealed documents destroyed at the end of this case, and no party was to directly or indirectly publicly disclose
the name of the resident or any information contained in the redacted record without further order of the court, except for
the limited purposes of litigation including examining witnesses and disclosing to experts the details of the resident's
conduct.

4. We note, however, that the mandamus record contains a copy of the Texas Department of Human Service's investigation
report regarding allegations against Goliad Manor. The report discusses incidents of sexual abuse at the nursing facility,
specifically one involving Ms. Rubio. It further addresses relator's knowledge of the male resident's behavior and its
response to, or failure to respond to, such knowledge.

5. Chapter 102, the referenced chapter, is entitled "Rights of the Elderly."

6. For example, provisions in this chapter provide "Texas or the Secretary of Health and Human Services may not require
disclosure of records of the Quality Assessment and Assurance Committee except insofar as [to ascertain] good faith
attempts by the committee to identify and correct quality deficiencies. . . ," 40 Tex. Admin. Code § 19.1917(c) & (d)
(2000), and "[t]he facility must make incident reports available for review, upon request . . . by representatives of DHS, the
U.S. Department of Health and Human Services, . . . and the Texas Department of Protective and Regulatory Services." 40
Tex. Admin. Code § 19.1923(e) (2000).






NUMBER 13-00-773-CV

 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI

 ___________________________________________________________________ 



IN RE: DIVERSICARE GENERAL PARTNER, INC.,

 DIVERSICARE LEASING CORPORATION, ADVOCAT, INC.,

 AND TEXAS DIVERSICARE LIMITED PARTNERSHIP

 D/B/A GOLIAD MANOR

 ___________________________________________________________________ 



On Petition for Writ of Mandamus

 ___________________________________________________________________ 



CONCURRING OPINION

 

Before the Court En Banc

 Concurring Opinion by Justice Dorsey



 I concur in the result reached by the majority, but I write separately to reiterate my position that redaction of the privileged
information may render nonparty medical records discoverable from a hospital or physician. See In re Columbia Valley
Regional Medical Center, No. 13-00-726-CV, slip op., 2001 Tex. App. LEXIS _______, at *____ (Tex. App.--Corpus
Christi, March ___, 2001). In Columbia Valley, I dissented because I believe that redacting all information that might
directly or indirectly reveal the identity of the nonparty patient whose records are being sought will make the records fall
outside the scope of the privilege. In this case, I agree that redacting the identity of the patient cannot prevent indirect
disclosure of his identity. Here, only one patient's records are sought. While it appears that nursing home records are
protected by different confidentiality statutes than are general medical records, the principle that redaction can bring a
document outside the scope of the privilege applies equally. 



______________________________ 

J. BONNER DORSEY, 

Justice 



Publish . 

Tex. R. App. P. 47.3(b). 



Concurring Opinion delivered and filed 

this 8th day of March, 2001.