**In re Natividad ARRIOLA, et al.**

**No. 13–03–376–CV.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

June 8, 2004.

Thomas J. Henry, Paul D. Andrews, Corpus Christi, Edwin L. McAninch, Houston, for relator.

Carlos Villarreal, Richard C. Woolsey, Hermansen, McKibben, Woolsey & Villarreal, Corpus Christi, James Wilde, Richard A. Sheehy, Sheehy, Serpe & Ware, Houston, Jennifer H. Rogers, Marian J. Wu, Davis & Davis, Monte James, Richard D. Agnew, Austin, for real parties interest.

Before the Court en banc.

## OPINION

Opinion by Chief Justice VALDEZ.

In this proceeding, relators, the family and estate of Virginia Arriola, seek relief from three trial court orders that cumulatively barred relators from obtaining "protected health information, medical condition, care and treatment, and/or personal and clinical information of any Sunnybrook Health Care Center resident" other than Arriola without authorization from the resident. Relators contend: (1) any privilege or confidentiality attached to the information was waived by the real parties; (2) the circumstances of this case fall under the "litigation" and "abuse and neglect" exceptions to the Texas Rules of Evidence regarding physician-patient privilege and confidentiality of mental health information; and (3) one of the orders is overly broad. We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

Relators brought suit against the real parties in interest, Sunnybrook Health Care Center ("Sunnybrook") and others ("real parties"),[1] contending Arriola suf-

1. The real parties in interest are Sunnybrook Healthcare Center; HP/Sunnybrook, Inc.; HP/Sunnybrook, Inc. d/b/a Sunnybrook Health Care Center; Sunnybrook Health Care and Rehabilitation Center; Healthprime, Inc.; HP/Management Services, Inc.; HP/Management Group, Inc.; Healthprime/HCC, Inc.; HP/Operations Group, Inc. d/b/a Sunnybrook Health Care Center; HP/Operations Group, Inc.; HP/Sunnybrook of Texas, Inc.; HP/Corpus Christi, Inc.; Eduardo A. Duarte, ADMN; Kenneth Green, ADMN; Sylvia Peoples, R.N.; Jaime David Sandoval, M.D.; Nestor H. Praderio, M.D.; Psychiatric Consulting Services,

fered injuries from repeated falls at Sunnybrook and was sexually assaulted by Gabriel Vela. At the time of the alleged incident, both Arriola and Vela were residents of Sunnybrook, a nursing home.[2] Vela was also under psychiatric care.

Relators alleged the real parties had knowledge that Vela previously assaulted and engaged in nonconsensual sexual behavior with Sunnybrook staff members and other residents. Relators raised allegations of negligence, negligence per se, and gross negligence, among other claims.

During depositions of their employees, the real parties asserted claims of physician-patient privilege to nearly all questions pertaining to Vela. They also refused to produce documents pertaining to Vela. Relators filed a motion to compel discovery pertaining to Vela and for sanctions. In the motion, they contended Sunnybrook produced its records pertaining to Vela in another suit without objection. Yet, in the present suit, the real parties repeatedly invoked the physician-patient privilege and objected and refused to produce documents or allow any testimony concerning Vela's conduct. Relators argued: (1) the prior disclosure of Vela's records waived any claims of privilege or confidentiality; and (2) the facts of this case fall within two exceptions to the rules of evidence pertaining to physician-patient privilege and confidentiality of mental health information in civil cases. *See* TEX.R. EVID. 509, 510.

In the real parties' response to this motion, they requested an order prohibiting relators from inquiring about the "protected health information, medical condition, care and treatment, or confidential communications [of] any Sunnybrook past or current residents other than Virginia Arriola." The real parties contended various statutes mandated confidentiality and no exception to the privileges applied. Dr. Nestor Praderio and Psychiatric Consulting Services, P.A., two of the real parties, filed a separate motion for an order of protection from discovery requests regarding the care, treatment, and conduct of patients other than Arriola.

On May 27, 2003, the trial court granted Dr. Praderio and Psychiatric Consulting Services, P.A.'s motion for a protective order. On May 30, 2003, the trial court denied relators' motion to compel discovery and for sanctions. And on June 6, 2003, the trial court entered an order prohibiting relators from:

> inquiring of Defendants, Dr. Jaime Sandoval, and their current and former employees, representatives, or agents regarding the protected health information, medical condition, care and treatment, and/or personal and clinical information of any Sunnybrook Health Care Center resident, whether former or current, other than Virginia Arriola, unless [relators] provide an authorization from such resident.

Relators request a writ of mandamus requiring the trial judge to vacate the May 27, May 30, and June 6 orders and to grant relators' motion to compel discovery.

## II. ANALYSIS

■ A writ of mandamus will issue to correct a clear abuse of discretion by a lower court where no adequate remedy at law exists. *In re CI Host, Inc.*, 92 S.W.3d 514, 516 (Tex.2002) (orig.proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839

P.A.; HP/Properties, Inc.; HP/Ancillaries, Inc.; Healthlink Services, L.L.C.; HP/Westmoreland, Inc.; HP/Hyde, Inc.; HP/Sunnybrook, Inc. f/k/a Sunnybrook Health Care Center; and HP/Sunnybrook of Texas, Inc.

d/b/a Sunnybrook Health Care and Rehabilitation Center.

2. Both Arriola and Vela are now deceased.

(Tex.1992) (orig.proceeding). We first consider whether the trial court abused its discretion in issuing the three orders.

## A. Abuse of Discretion

■ "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker*, 827 S.W.2d at 840. The trial court abuses its discretion when it clearly fails to correctly analyze or apply the law to the facts. *Id.*

### 1. Rules of Evidence

■ The Texas Rules of Evidence recognize the existence of the physician-patient privilege and the mental health information privilege. *R.K. v. Ramirez*, 887 S.W.2d 836, 839–40 (Tex.1994) (orig.proceeding); *see* Tex.R. Evid. 509, 510. Rule 509, which governs the physician-patient privilege, states in part:

In a civil proceeding:

(1) Confidential communications between a physician and a patient, relative to or in connection with any professional services rendered by a physician to the patient are privileged and may not be disclosed.

(2) Records of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician are confidential and privileged and may not be disclosed.

Tex.R. Evid. 509(c)(1), (2). Rule 510, which governs the confidentiality of mental health information in civil cases, states in part:

(1) Communication between a patient and a professional is confidential and shall not be disclosed in civil cases.

(2) Records of the identity, diagnosis, evaluation, or treatment of a patient which are created or maintained by a

professional are confidential and shall not be disclosed in civil cases.

Tex.R. Evid. 510(b)(1), (2).

■ These privileges serve two purposes. They encourage communication that is necessary for effective treatment and prevent unnecessary disclosure of highly-personal information. *R.K.*, 887 S.W.2d at 840 (citing *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 107 (Tex.1985) (orig.proceeding) and *Ex Parte Abell*, 613 S.W.2d 255, 262 (Tex.1981) (orig.proceeding)).

■ These privileges, however, are not absolute. *Id.* They are subject to various exceptions. *Id.; see* Tex.R. Evid. 509(e), 510(d). Relevant to the case before us are the abuse-and-neglect exceptions to these rules. Rules 509 and 510 both contain an exception to privilege and confidentiality "in any proceeding regarding the abuse or neglect, or the cause of any abuse or neglect, of the resident" of an "institution" as defined in section 242.002 of the health and safety code. Tex.R. Evid. 509(e)(7), 510(d)(6); *see* Tex. Health & Safety Code Ann. § 242.002 (Vernon 2001).

■ Here, the trial court's orders, and particularly the June 6, 2003 order, broadly bar inquiry into the "protected health information, medical condition, care and treatment, and/or personal and clinical information" of any Sunnybrook resident other than Arriola without the resident's approval. The broad bar includes information that is subject to the privileges defined in rules 509 and 510, such as communications between the patient and physician and records regarding the treatment of a patient.

However, the privileged information was sought in a case that falls squarely within the abuse-and-neglect exceptions to these rules. Relators alleged Arriola was the resident of a nursing home, which undis-

putedly falls within the definition of "institution" as defined in section 242.002 of the health and safety code.[3] Relators alleged Arriola suffered numerous falls as a result of the real parties' neglect. Relators also alleged Arriola suffered abuse while a resident of the facility.

Relators sought to obtain and use Vela's medical records and elicit testimony from the real parties' employees about Vela. Relators needed this information to assist them in proving Sunnybrook was aware of previous instances of abuse by Vela, yet took no steps to protect Arriola from him. Not only are the proceedings about the abuse and neglect of a nursing facility resident, but the information sought also directly pertains to the allegations of abuse by Vela.

### 2. The Real Parties' Contentions

The real parties contend the abuse-and-neglect exceptions do not apply here for several reasons. We conclude their arguments lack merit.

■ First, the real parties contend the abuse-and-neglect exceptions apply only to proceedings brought by appropriate law enforcement agencies. The real parties reach this conclusion by noting the similarity in language between these exceptions

and the language in section 242.129 of the health and safety code.[4] TEX. HEALTH & SAFETY CODE ANN. § 242.129 (Vernon 2001). They contend that because section 242.129 pertains only to investigations into allegations of abuse and neglect by the Texas Department of Human Services or other designated agency, the abuse-and-neglect exceptions to rules 509 and 510 apply solely to investigations brought by those agencies.

However, the abuse-and-neglect exceptions to rules 509 and 510 contain no such limitation. The introductory language to all the exceptions listed in rules 509 and 510 state that the exceptions apply in administrative proceedings and civil proceedings in court. TEX.R. EVID. 509(e), 510(d). Moreover, the abuse-and-neglect exceptions themselves state that they apply to "*any proceeding* regarding the abuse or neglect, or the cause of any abuse or neglect, of the resident of an institution." TEX.R. EVID. 509(e)(7), 510(d)(6) (emphasis added). The "proceeding" giving rise to the petition before us is a civil proceeding in court. Thus, the exceptions apply here.

■ Second, the real parties contend numerous state statutes and administrative rules protect the records and medical

---

3. Section 242.002 of the health and safety code defines "institution," in part, as:

> an establishment that:
> (i) furnishes, in one or more facilities, food and shelter to four or more persons who are unrelated to the proprietor of the establishment; and
> (ii) provides minor treatment under the direction and supervision of a physician licensed by the Texas State Board of Medical Examiners, or other services that meet some need beyond the basic provision of food, shelter, and laundry.

TEX. HEALTH & SAFETY CODE ANN. § 242.002(6), (10)(A) (Vernon 2001). The parties do not dispute that Sunnybrook is an institution as defined in this statute. In addition, the plead-

ings and other documents submitted to this Court indicate Sunnybrook is an institution. *See id.* The pleadings refer to Sunnybrook as a nursing home. Other documents indicate the home had multiple residents that received food and shelter and were under the care or treatment of a physician. There is no indication that residents of the home were related to the proprietors of Sunnybrook.

4. Section 242.129 states: "In a proceeding regarding the abuse or neglect of a resident or the cause of any abuse or neglect, evidence may not be excluded on the ground of privileged communication except in the case of a communication between an attorney and client." TEX. HEALTH & SAFETY CODE ANN. § 242.129 (Vernon 2001).

information from disclosure in this case.[5] Several provisions of the health and safety code and human resources code prevent a nursing facility from releasing certain medical information pertaining to its residents. TEX. HEALTH & SAFETY CODE ANN. § 241.153 (Vernon 2001) (patient's health care information may be released by the health care facility in only limited circumstances); TEX. HUM. RES.CODE ANN. § 102.003(j) (Vernon 2001) (prohibiting a nursing facility from releasing a resident's personal and clinical records); *cf.* TEX. HEALTH & SAFETY CODE ANN. § 242.501(a)(8) (Vernon Supp.2004) (directing Department of Human Services to adopt statement that resident has right to have information about resident in possession of institution maintained confidential). Title 40 of the administrative code also contains several provisions pertaining to the confidentiality of a nursing facility resident's personal and clinical records. 40 TEX. ADMIN. CODE § 19.407 (2003) (declaring nursing facility resident has right to privacy and confidentiality of personal and clinical records and can refuse release of records to persons *outside facility*), § 19.1910(d) (2003) (directing nursing facilities to keep confidential all information contained in resident's records), § 19.1912(h) (2003) (directing nursing facilities to develop and maintain policies and procedures to safeguard the confidentiality of medical record information from unauthorized access).

In addition, the privileges enumerated in rules of evidence 509 and 510 also appear in the statutes. Chapter 611 of the health and safety code, which pertains to mental health records, protects from disclosure communications between a patient and a professional and records of the identity, diagnosis, evaluation, or treatment of a patient created or maintained by a professional. TEX. HEALTH & SAFETY CODE ANN. § 611.002 (Vernon 2003). Section 159.002 of the occupations code also protects from disclosure certain communications between a physician and a patient and records of the identity, diagnosis, evaluation, or treatment of a patient created or maintained by a physician. TEX. OCC.CODE ANN. § 159.002(a), (b) (Vernon 2004).

However, each of the confidentiality and privilege provisions cited by the real parties contains an exception to nondisclosure where release of the information is required by law or ordered by the court. *See* TEX. HEALTH & SAFETY CODE ANN. § 241.153(19) (allowing disclosure of a patient's health care information to comply with a court order), § 611.006(a)(11) (Vernon 2003) (allowing disclosure of confidential mental health communications and records in judicial proceeding where the court has issued order);[6] TEX. HUM. RES.CODE ANN. § 102.003(j)(2) (allowing release of elderly individual's personal and clinical records where release is required by another law); TEX. OCC.CODE ANN.

---

**5.** The real parties also contend the records and information sought are protected from disclosure under federal law. However, the real parties cite to a statute and a regulation containing only definitions. *See* 42 U.S.C. § 1320d (2003); 45 C.F.R. § 164.501 (2003). *They cite to no authority preventing the disclosure of the information sought here.* For this reason, we do not consider this argument. *See* TEX.R.APP. P. 52.3(h), 52.4.

**6.** Section 611.006(a)(8) also contains an exception to the confidentiality rule *that is simi-*

lar to the abuse-and-neglect exception of rule 510:

> (a) a professional may disclose confidential information in:
>
> * * *
>
> (8) a judicial or administrative proceeding regarding abuse or neglect, or the cause of abuse or neglect, of a resident of an institution, as that term is defined by Chapter 242.

TEX. HEALTH & SAFETY CODE ANN. § 611.006(a)(8) (Vernon 2003).

§ 159.003(a)(12) (Vernon 2004) (allowing disclosure of privileged communications or records to a court or party to an action if pursuant to a court order); 40 Tex. Admin. Code § 19.407(3)(B) (providing that resident's right to refuse release of personal and clinical records does not apply where release is required by law), § 19.1910(d)(2) (stating exception to confidentiality of a resident's records exists when release is required by law), § 19.1912(h)(2) (stating nursing facility must allow access to or release of confidential medical information under court order).

Here, the rules of evidence are the "law" that requires release of the information. *See In re City of Georgetown*, 53 S.W.3d 328, 332 (Tex.2001) (orig.proceeding) (stating that commonly understood meaning of "law" includes rules of evidence). To the extent that the information falls within the scope of rules of evidence 509 and 510, it is subject to the abuse-and-neglect exceptions to nondisclosure. The statutes and rules cited by the real parties do not prevent disclosure here. Thus, instead of barring discovery on this matter, the trial court should have granted relators' motion to compel.

Third, the real parties contend we resolved this issue in favor of nondisclosure in *In re Diversicare General Partner, Inc.*, 41 S.W.3d 788 (Tex.App.-Corpus Christi 2001, orig. proceeding). The facts in *Diversicare* are similar to those presented here. In that case, the real parties sued relators, a nursing home and other parties, for the sexual assault of a female resident of the nursing home, which was committed by a male resident of the same facility. *Id.* at 791. The real parties sought the personal and clinical records of the male resident, and the trial court ordered production of the records. *Id.*

On petition for writ of mandamus in *Diversicare*, we reviewed the various provisions of the health and safety code, the human resource code, and the administrative code that require nursing facilities to keep certain records and information about their residents confidential. *Id.* at 792–93. We found that, under the statutes and administrative rules cited and discussed by the parties, the trial court did not have authority to order the disclosure of certain medical information about the male resident. *Id.* at 793. The parties, however, did not reference the rules of evidence. Based on the parties' arguments, we concluded that the trial court had abused its discretion; and, on that basis, we granted relief to prevent the court-ordered disclosure. *Id.* at 796.

Although the rules of evidence were not raised by either party in *Diversicare*, had they been raised, the result most likely would have been different. To the extent our decision in *Diversicare* can be read as inconsistent with our analysis in this case, we overrule *Diversicare*. Accordingly, relators' reliance on *Diversicare* in support of its position in this case is misplaced.

In the present case, we conclude the trial court abused its discretion when it failed to correctly apply the law to the facts before it because its orders improperly barred discovery of information that is exempt from claims of privilege and confidentiality under rules of evidence 509 and 510. *See Walker*, 827 S.W.2d at 840 (clear failure by trial court to analyze or apply law correctly constitutes abuse of discretion). We now turn to the question of whether an adequate remedy at law exists.

## B. No Adequate Remedy at Law

■ No adequate remedy at law exists where the trial court's discovery error vitiates or severely compromises a party's ability to present a viable claim or defense. *Walker*, 827 S.W.2d at 843. Appellate remedy may be inadequate where a

denial of discovery "go[es] to the heart of a party's case." *Id.*

 Here, the relators' claims against the real parties in connection with the assault by Vela are based on the real parties' knowledge of previous assaults committed by Vela against other residents and staff. The trial court's orders, in effect, barred any inquiry into the real parties' knowledge of Vela's prior conduct while a resident of Sunnybrook.

Although counsel for relators had obtained Sunnybrook's records on Vela in another lawsuit, the trial court "sealed" these records during the hearing that gave rise to the orders at issue here. The court instructed relators not to show the records to anyone or ask any witness about them. The trial court's orders compromised relators' ability to present their claims. Accordingly, we find no adequate remedy at law exists.

## III. CONCLUSION

Because we conclude the trial court abused its discretion and no adequate remedy at law exists, we need not address relators' remaining contentions. *See* TEX. R.APP. P. 47.1. We note that our decision here does not allow or encourage unfettered discovery of information about Sunnybrook residents. We urge the trial court to keep in mind the supreme court's caution in *R.K.*:

> We stress that the highly personal nature of this information places a heavy responsibility on the trial court to prevent any disclosure that is broader than necessary.... Trial courts must use great care when permitting discovery of such sensitive information....

*R.K.*, 887 S.W.2d at 844 (citations omitted). Furthermore, even when a document contains some information to which the 509(e)(7) and 510(d)(6) exceptions apply, any information in the document not meeting that standard remains privileged and must be redacted. *In re Whiteley*, 79 S.W.3d 729, 733–34 (Tex.App.-Corpus Christi 2002, orig. proceeding).

We conditionally grant relators' petition for writ of mandamus. We order the trial court to vacate the three orders limiting discovery and to grant relators' motion to compel discovery pertaining to Vela. Mandamus will issue only if the trial court fails to do so.